UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| RAYMOND R. YOEL, | ) | CASE NO. 1:06 CV 3087 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| SHANNON A. GANDOLF, et al., | ) | AND ORDER |
| | ) | |
| Defendants. | ) | |

On December 26, 2006, pro se plaintiff Raymond R. Yoel filed this action under 42 U.S.C. § 1983 against Lake County Sheriff's Deputy Shannon A. Gandolf, Lake County Sheriff Daniel A. Dunlap, the Lake County Sheriff's Office, Lake County Common Pleas Court Judge Eugene A. Lucci, the Lake County Common Pleas Court, Ohio Eleventh District Court of Appeals Administrative Judge Donald R. Ford, Ohio Eleventh District Court of Appeals Judge William O'Neill, Ohio Eleventh District Court of Appeals Judge Cynthia Westcott Rice, Ohio Eleventh District Court of Appeals Judge Colleen Mary O'Toole, the Ohio Eleventh District Court of Appeals, and Citifinancial Mortgage Company, Inc. ("Citifinancial"). In the complaint, plaintiff asserts he was denied due process and equal protection in connection with a foreclosure action in Lake County, Ohio. He seeks injunctive relief and monetary damages. Mr. Yoel also filed an Application to Proceed In Forma Pauperis. That Application is granted.

**Background**

Mr. Yoel purchased a residence at 2310 Rockefeller Road, Wickliffe, Ohio 44077 on October 6, 2000 for $ 108,000.00 and financed this purchase with a mortgage through Equifirst Corporation ("Equifirst"). The mortgage was sold to Citifinancial in December 2000.

Mr. Yoel was terminated from his employment in April 2003. He was able to make mortgage payments in May, July, August, September and October 2003, and February 2004. In May 2004, he was informed by Citifinancial that if he did not make a full payment of the overdue balance by the end of the month, legal proceedings would commence. Mr. Yoel was unable to comply with the demand, and on June 4, 2004, Citifinancial filed a foreclosure action in the Lake County Court of Common Pleas.

Judge Eugene Lucci found in favor of Citifinancial and issued a judgment of foreclosure on October 12, 2004. Mr. Yoel indicates he filed an appeal of that judgment in the Ohio Eleventh District Court of Appeals on November 10, 2004. He soon discovered that the filing of the notice of appeal would not automatically stop the execution of the judgment. The property was scheduled for sheriff's sale on December 27, 2004. Mr. Yoel filed a Motion to Stay the Execution of the Judgment in the Lake County Court of Common Pleas on November 19, 2004. Citifinancial opposed the Motion on December 3, 2004 and requested that Mr. Yoel be required to post a supersedeas bond pursuant to Ohio Rule of Civil Procedure 62(B). On December 16, 2004, the Lake County Court of Common Pleas issued an Order requiring Mr. Yoel to post a bond in the amount of $ 85,000.00 as a condition precedent to the issuance of the stay. Instead of posting the bond, Mr. Yoel sought relief in the Eleventh District Court of Appeals by filing the Motion to Stay Execution of the Judgment in that court on December 17, 2004.

Ten days lapsed without a ruling on the Motion to Stay from the Court of Appeals. On the morning of the sale, Mr. Yoel called the Lake County Sheriff's Office and spoke with Deputy Shannon Gandolf. He asked what procedure he should follow in the event that the motion was granted and was told the order would be transmitted to the office of the sheriff and the house would be withdrawn from the auction that day. He was also told that the order would need to be received before the house was sold. She estimated the sale would occur around 10:15 a.m. because Mr. Yoel's property was sixth on the list of properties scheduled for auction that day. Mr. Yoel then visited the Eleventh District Court of Appeals where he learned that the Motion had just been granted. He was handed a certified copy of the opinion temporarily staying the sale and overruling the bond requirement. He contends he immediately drove to the Lake County Courthouse and presented a copy of that order to Deputy Gandolf. At the same time, the sheriff's office called Deputy Gandolf to tell her they had received a copy of the order by fax from the Court of Appeals. Although it was 10:12 a.m., Mr. Yoel was told the property had already been put up for auction. He claims he was told "the lawyers would take care of it." (Compl. at 15.) An Order of Sale was filed by the sheriff on December 30, 2004 indicating that the property had been sold to Citifinancial for $ 96,548.14. The sale was not confirmed, however, due to the temporary stay granted by the Ohio Court of Appeals.

Thereafter, both parties litigated the issuance of the temporary stay. On February 11, 2005, the Court of Appeals issued its decision, dissolving the temporary stay it had imposed, and stating that to the extent that a stay of the appealed judgment might still be possible, Mr. Yoel would have to post a bond of $ 85,000.00 in order for the stay to take effect. In response to the dissolution of the temporary stay, Citifinancial filed a Motion for Entry of the Confirmation of Sale

and Distribution of Proceeds on March 28, 2005. Mr. Yoel opposed the confirmation of sale and asked that it be stricken from the record, contending that the sale should not have gone forward in light of the temporary stay. On July 12, 2005, the Common Pleas Court denied Mr. Yoel's Motion to Vacate Sheriff's Sale and Motion to Strike, and confirmed the Order of Sale.

Ten days later, a Writ of Possession and a copy of the land appraisement was issued to the sheriff. Mr. Yoel contends the Lake County Sheriff's Office left a note on the front door of the residence at 2310 Rockefeller Road stating that he would have to vacate the premises by August 3, 2005. Mr. Yoel filed a Motion to Stay the Execution of the Confirmation of Sale in the Eleventh District Court of Appeals on August 4, 2005. The Motion was denied the following day. He received a second notice to vacate the premises on August 11, 2005. Mr. Yoel indicates he moved from the residence on August 25, 2005. The move was monitored by the Lake County Sheriff's Deputies. He claims he was told that if he returned to the property, he would be trespassing. He states that the house is located across from Wickliffe High School. From that vantage point, he observed that by early October, exterior work was being done to the house and that the house was occupied even though oral arguments had not been heard in the Eleventh District Court of Appeals or a decision regarding the appeal issued. On January 30, 2006, the Court of Appeals issued its decision affirming the trial court's judgment in the foreclosure action.

Mr. Yoel's complaint contains four counts, each of which asserts that he was deprived of "his rights with respect to the Fourteenth Amendments [sic] of the United States Constitution." (Compl. at 21.) Count I seeks relief under 42 U.S.C. § 1981. Count II seeks relief under 42 U.S.C. § 1983. Count III seeks relief under 42 U.S.C. § 1985 and Count IV, which is labeled again as Count III, seeks relief under 42 U.S.C. § 1986. Mr. Yoel asks this Court to

"temporarily restrain and permanently enjoin the defendants, their agents, employees and any persons acting independently or in concert with the defendants from further enforcing a policy and practice which discriminates against citizens of the United States solely on the grounds of being named a defendant in a foreclosure action." (Compl. at 21.)  He further asks this court to direct the defendants to "establish rules and regulations with respect to procedures which afford and insure fundamental notions of fairness and due process as they apply to plaintiff and others with respect to rights insured under the Fourteenth Amendment...with respect to deprivations of property and liberty." (Compl. at 22.)  Finally Mr. Yoel seeks unspecified compensatory, punitive and exemplary damages.

## Analysis

Although pro se pleadings are liberally construed, Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam); Haines v. Kerner, 404 U.S. 519, 520 (1972), the district court is required to dismiss an in forma pauperis action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.[1]  Neitzke v. Williams, 490 U.S. 319 (1989); Lawler v. Marshall, 898 F.2d 1196 (6th Cir. 1990); Sistrunk v. City of Strongsville, 99 F.3d 194, 197 (6th Cir. 1996).  For the reasons stated below, this action is dismissed pursuant to §1915(e).

Because his claims are stated largely as legal conclusions, with little or no

---

[1] An in forma pauperis claim may be dismissed sua sponte, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute.  McGore v. Wrigglesworth, 114 F.3d 601, 608-09 (6th Cir. 1997); Spruytte v. Walters, 753 F.2d 498, 500 (6th Cir. 1985), cert. denied, 474 U.S. 1054 (1986); Harris v. Johnson, 784 F.2d 222, 224 (6th Cir. 1986); Brooks v. Seiter, 779 F.2d 1177, 1179 (6th Cir. 1985).

explanation, it is difficult to determine the precise nature of Mr. Yoel's claims. Based on the factual narrative preceding his causes of action, it appears that he is objecting to the judgments in the Lake County Court of Common Pleas foreclosure action, asking that the defendants be enjoined from enforcing these judgments, and seeking monetary damages for the losses and aggravation he incurred in the process. To the extent that this is his intention, his claims must be dismissed.

United States District Courts do not have jurisdiction over challenges to state court decisions even if those challenges allege that the state court's action was unconstitutional. See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 483 n. 16 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16 (1923). Federal appellate review of state court judgments can only occur in the United States Supreme Court, by appeal or by writ of certiorari. Id. Under this principle, generally referred to as the Rooker-Feldman Doctrine, a party losing his case in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States District Court based on the party's claim that the state judgment itself violates his or her federal rights. Johnson v. DeGrandy, 512 U.S. 997, 1005-06 (1994). Federal jurisdiction cannot be invoked merely by couching the claims in terms of a civil rights action. Lavrack v. City of Oak Park, No. 98-1142, 1999 WL 801562 *2 (6th Cir. Sept. 28, 1999); see also, Valenti v. Mitchell, 962 F.2d 288, 296 (3d Cir.1992).

The United States Sixth Circuit Court of Appeals has applied two elements to a Rooker-Feldman analysis. First, in order for the Rooker-Feldman doctrine to apply to a claim presented in federal district court, the issue before the court must be inextricably intertwined with the claim asserted in the state court proceeding. Catz v. Chalker, 142 F.3d 279, 293 (6th Cir. 1998); see Tropf v. Fidelity National Title Insurance Co., 289 F.3d 929, 937 (6th Cir. 2002). "Where

federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state court judgment." Catz, 142 F.3d at 293.  The Rooker-Feldman doctrine applies when the party losing his case in state court files suit in federal district court seeking redress for an injury allegedly caused by the state court's decision itself.  Coles v. Granville, 448 F.3d 853, 857-59 (6th Cir. 2006).  Second, the Rooker-Feldman doctrine precludes a district court's jurisdiction where the claim is a specific grievance that the law was invalidly or unconstitutionally applied in plaintiff's particular case as opposed to a general constitutional challenge to the state law applied in the state action. Id.; Tropf, 289 F.3d at 937.

In the present action, Mr. Yoel's assertions that he was denied due process and equal protection appear to directly attack the state court's decisions to grant the foreclosure in favor of Citifinancial, to dissolve the temporary stay, and to confirm the sale.  All of the allegations in the pleading concern specific grievances that the law was incorrectly applied to plaintiff's case, and are clearly predicated on his belief that the state courts were mistaken in rendering their decisions against him.  Moreover, plaintiff requests as relief that the state judgment be declared unconstitutional and its execution enjoined. Any review of the constitutional claims asserted in this context would require the court to review the specific issues addressed in the state court proceedings against him.  This court lacks subject matter jurisdiction to conduct such a review or grant the relief as requested.  Feldman, 460 U.S. at 483-84 n. 16; Catz, 142 F.3d at 293.

Furthermore, to the extent that Mr. Yoel merely is seeking to re-litigate the foreclosure matters in this court, his complaint must still be dismissed.  A federal court must give a state court judgment the same preclusive effect it would have in the courts of the rendering state.

28 U.S.C. § 1738; Dubuc v. Green Oak Township, 312 F.3d 736, 744 (6th Cir. 2002). Under Ohio law, an existing final judgment or decree is conclusive as to all claims which were or might have been litigated in the first lawsuit. National Amusement, Inc. v. Springdale, 53 Ohio St. 3d 60, 62 (1990). The doctrine of res judicata requires a plaintiff to present every ground for relief in the first action he files, or forever be barred from asserting it. Id. The purpose of this doctrine is to promote the finality of judgments and thereby increase certainty, discourage multiple litigation, and conserve judicial resources. Allen v. McCurry, 449 U.S. 90, 94 (1980). The Ohio courts have already determined that the foreclosure action and confirmation of the sale of the property were proper. This court is bound to give full faith and credit to the decisions of those courts.

Finally, even if this court had subject matter jurisdiction to entertain these causes of action, Mr. Yoel fails to state a claim upon which relief may be granted against these defendants. He first asserts a cause of action under 42 U.S.C. §1981. To establish a claim under that statute, Mr. Yoel must allege: (1) he is a member of a racial minority, (2) the defendants intended to discriminate against him on the basis of his race, and (3) the discrimination concerned one or more of the activities enumerated in the statute. Johnson v. Harrell, No. 97-5257, 1998 WL 57356 (6th Cir. Feb. 2, 1998); Morris v. Office Max, Inc., 89 F.3d 411, 413 (7th Cir. 1996). The complaint gives no indication that Mr. Yoel is a member of a racial minority or that any of the defendants intended to discriminate against him on the basis of his race. His requests for relief under this statute must therefore be denied.

Mr. Yoel also attempts to assert claims under 42 U.S.C. § 1983. To set forth a prima facie case under 42 U.S.C. § 1983, plaintiff must assert that a person acting under color of state law deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United

States. Parratt v. Taylor, 451 U.S. 527, 535 (1981). Mr. Yoel's claims fail to meet both of these criteria.

As an initial matter, to be considered a "state actor" under § 1983, the defendant must generally be a state or local government entity or employee. Id. A private party may be found to have acted under color of state law to establish the first element of this cause of action only when the party "acted together with or ... obtained significant aid from state officials" and did so to such a degree that its actions may properly be characterized as "state action." Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982). An individual may also be considered a state actor if he or she exercises powers traditionally reserved to a state. Jackson v. Metropolitan Edison Co., 419 U.S. 345, 352 (1974). Citifinancial is not a government entity and there is no suggestion in the pleading that this defendant engaged in actions which could be deemed to be state action. Merely being a participant in litigation does not make a private party a co-conspirator or joint actor with the state. Dennis v. Sparks, 449 U.S. 24, 28 (1980).

Furthermore, the Lake County Sheriff's Office and the Lake County Common Pleas Court are not sui juris and therefore cannot sue or be sued. See Nieves v. City of Cleveland, 153 Fed. Appx. 349, 2005 WL 2033328 (6th Cir. Aug. 24, 2005); Jones v. Ptl. D. Marcum, No. C-3-00-335, 2002 WL 786572 (S.D. Ohio Mar. 11, 2002); Williams v. Dayton Police Dept., 680 F. Supp. 1075 (S.D. Ohio 1987). They are merely sub-units of the municipalities they serve. Id. Consequently, Mr. Yoel's claims against the Lake County Sheriff's Office and the Lake County Common Pleas Court are redundant because they are both subdivisions of Lake County, Ohio.

As a rule, local governments may not be sued under 42 U.S.C. § 1983 for an injury inflicted solely by employees or agents under a respondeat superior theory of liability. See Monell

-9-

v. Department of Soc. Servs., 436 U.S. 658, 691(1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id. at 694. A municipality can therefore be held liable when it unconstitutionally "implements or executes a policy statement, ordinance, regulation, or decision officially adopted by that body's officers." Id. at 690; DePiero v. City of Macedonia, 180 F.3d 770, 786 (6th Cir. 1999). The complaint contains no suggestion of a custom or policy of the Lake County, Ohio which may have resulted in the deprivation of a federally protected right of the plaintiff.

Similarly, the Ohio Eleventh District Court of Appeals is a sub-unit of the State of Ohio. The Eleventh Amendment is an absolute bar to the imposition of liability upon states, their agencies, and their employees sued in their official capacities. Latham v. Office of Atty. Gen. of State of Ohio, 395 F.3d 261, 270 (6th Cir. 2005).

There are no allegations in the complaint which reasonably suggest that Sheriff Daniel Dunlap or Deputy Shannon Gandolf denied Mr. Yoel due process or equal protection. Mr. Yoel indicates he spoke with Ms. Gandolf on the telephone prior to the sheriff's sale and received advice from her. Aside from the fact that she told Mr. Yoel the property would probably be auctioned at 10:15 and the sale occurred a few minutes earlier at 10:12, there are no facts alleged in the complaint to suggest that she denied him due process or equal protection or that she was in any way involved in the prior or subsequent legal proceedings. There are no allegations suggesting that Sheriff Dunlap directly participated in any aspect of the foreclosure process. Mr. Yoel cannot establish the liability of any defendant absent a clear showing that the defendant was personally

involved in the activities which form the basis of the alleged unconstitutional behavior. Rizzo v. Goode, 423 U.S. 362, 371 (1976); Mullins v. Hainesworth, No. 95-3186, 1995 WL 559381 (6th Cir. Sept. 20, 1995). The complaint simply contains no facts which reasonably associate these defendants to the due process and equal protection claims set forth by the plaintiff.

The remaining defendants are all judges who presided over or issued decisions in the foreclosure action. Judicial officers are absolutely immune from civil suits for money damages. Mireles v. Waco, 502 U.S. 9, 9 (1991); Barnes v. Winchell, 105 F.3d 1111, 1115 (6th Cir. 1997). They are accorded this broad protection to ensure that the independent and impartial exercise of their judgment in a case is not impaired by the exposure to damages by dissatisfied litigants. Barnes, 105 F.3d at 1115. For this reason, absolute immunity is overcome only in two situations: (1) when the conduct alleged is performed at a time when the defendant is not acting as a judge; or (2) when the conduct alleged, although judicial in nature, is taken in complete absence of all subject matter jurisdiction of the court over which he or she presides. Mireles, 502 U.S. at 11-12; Barnes, 105 F.3d at 1116. Stump, 435 U.S. at 356-57. A judge will be not deprived of immunity even if the action he or she took was performed in error, done maliciously, or was in excess of his or her authority. It is clear from the allegations in the complaint that Mr. Yoel believes that the Judges were mistaken when they ruled in favor of Citifinancial. Unfortunately, he does not have recourse against these judges under 42 U.S.C. § 1983 for those actions.

Mr. Yoel next asserts claims under 42 U.S.C. §§ 1985 and 1986. To establish a violation of § 1985, plaintiff must allege that the defendants conspired together for the purpose of depriving the plaintiff of the equal protection of the laws and committed an act in furtherance of the conspiracy which was motivated by racial or other class-based invidiously discriminatory

-11-

animus. Bass v. Robinson, 167 F.3d 1041, 1050 (6th Cir. 1999). Plaintiff alleges no facts to suggest that any of the defendants conspired together or that their actions were in any way motivated by plaintiff's race or membership in a protected class. Because Mr. Yoel has failed to state a claim under § 1985, his claims for relief under § 1986 must also be dismissed. Section 1986 imposes liability on those individuals who have knowledge of any of the wrongs prohibited by § 1985, yet fail to prevent them. Without a violation of § 1985, there can be no violation of § 1986.

## Conclusion

Accordingly, Mr. Yoel's Application to Proceed In Forma Pauperis is granted and this action is dismissed pursuant to 28 U.S.C. § 1915(e). The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[2]

IT IS SO ORDERED.

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
UNITED STATES DISTRICT JUDGE

Dated: 3/8/07

---

[2] 28 U.S.C. § 1915(a)(3) provides:

> An appeal may not be taken in forma pauperis if the trial court certifies that it is not taken in good faith.